Barry Lee FAIRCHILD, Appellant,

v.

A.L. LOCKHART, Director, Arkansas
Department of Correction,
Appellee.

Barry Lee FAIRCHILD, Appellant,

v.

A.L. LOCKHART, Director, Arkansas
Department of Correction,
Appellee.

Nos. 90–2438, 91–2532.

United States Court of Appeals,
Eighth Circuit.

Submitted April 14, 1992.

Decided Nov. 10, 1992.

Rehearing and Rehearing En Banc
Denied Dec. 30, 1992.

Richard H. Burr, New York City, argued, for appellant.

Jack Gillean, Asst. Atty. Gen., Little Rock, Ark., argued, for appellee.

Before ARNOLD, Chief Judge, ROSS, Senior Circuit Judge, and MAGILL, Circuit Judge.

MAGILL, Circuit Judge.

We have for review a third federal habeas appeal on the guilt phase of this capital murder conviction which occurred over nine years ago. The murder took place on February 26, 1983, in Arkansas. Appellant was apprehended on the night of March 4, 1983, and early in the morning of March 5 made two videotaped confessions. After the first confession and before the second, he led the sheriff's deputies on a tour, showing them where he and his accomplice abducted and killed their victim. On August 2, 1983, an Arkansas jury found him guilty and sentenced him to death. Petitioner elected to be executed by lethal in-

jection rather than electrocution under Ark. Stat.Ann. § 41–1354 (Supp.1983). This third federal appeal brings into issue newly discovered evidence that these confessions were coerced and unreliable. We affirm the district court's [1] fact finding and denial of the writ.

Barry Lee Fairchild was convicted and sentenced to death for the murder of Marjorie Mason, a navy nurse. The Arkansas Supreme Court affirmed the conviction and sentence on direct appeal, *Fairchild v. State,* 681 S.W.2d 380 (1984) (Fairchild argued, primarily, that the jury selection process was flawed, the trial was held in an improper venue, the Arkansas death penalty was unconstitutional, and certain photographs of the victim should not have been admitted into evidence), *cert. denied,* 471 U.S. 1111, 105. S.Ct. 2346, 85 L.Ed.2d 862 (1985). State post-conviction relief was also denied. *Fairchild v. State,* 690 S.W.2d 355 (1985) (Fairchild sought stay of execution and permission to proceed in circuit court for post-conviction relief). Fairchild then filed a first petition for writ of habeas corpus in federal district court. The district court denied the petition, *Fairchild v. Lockhart,* 675 F.Supp. 469 (E.D.Ark.1987) (Fairchild argued that he received ineffective assistance of counsel at trial because his attorney failed to challenge the legality of his arrest, and that his confessions were coerced and unreliable), and we affirmed. *Fairchild v. Lockhart,* 857 F.2d 1204 (8th Cir.1988), *cert. denied,* 488 U.S. 1051, 109 S.Ct. 884, 102 L.Ed.2d 1007 (1989). Fairchild then filed a second petition for writ of habeas corpus which the district court again denied in a 137–page opinion. *Fairchild v. Lockhart,* 744 F.Supp. 1429 (1989) (Fairchild argued that he is mentally retarded, so that his waiver of his constitutional rights before his confessions was not knowing and voluntary, and Arkansas' failure to discover his retardation rendered its pretrial evaluation of his mental condition inadequate), *aff'd,* 900 F.2d 1292 (8th Cir.1990). After the district court dismissed his third petition on Au-

gust 29, 1990, Fairchild appealed to this court and filed a motion to remand to the district court. We granted the motion to remand with directions to the district court to hold an evidentiary hearing on the issue of whether Fairchild's confessions were voluntary in view of certain alleged new evidence on coercion in the sheriff's office and to certify its findings of fact back to this court. *Fairchild v. Lockhart,* 912 F.2d 269 (8th Cir.1990). After a seventeen-day evidentiary hearing, the district court concluded that Fairchild was not entitled to habeas relief. Its findings of fact consisted of 133 pages of oral findings issued from the bench, a 413–page written order on the remaining factual and legal issues, and a 15–page memorandum of law regarding procedural issues. *Fairchild v. Lockhart,* No. PB–C–85–282 (E.D.Ark. June 4, 1991). These findings were certified to this court. Fairchild appeals several of the findings.

## I.

We forego an extensive recitation of the facts because they have been amply set out in prior opinions. The district court found facts related to two constitutional claims during this latest extensive evidentiary hearing—whether Fairchild's confessions were coerced and unreliable and whether Fairchild has a valid *Brady* claim with regard to certain newly discovered evidence. We discuss Fairchild's assignment of error as to the court's findings on each claim in turn, providing the relevant facts as necessary.

### A. Determination That Confession Was Voluntary

As a result of Fairchild's third habeas appeal, we remanded to the district court for an evidentiary hearing based on alleged newly discovered evidence supporting Fairchild's claim that his videotaped confessions, introduced at trial, were coerced and

---

**1.** The Honorable G. Thomas Eisele, Senior United States District Judge for the Eastern District of Arkansas. Judge Eisele has presided over all habeas proceedings involving Fairchild.

unreliable.[2] At this hearing, the testimony of several men who claimed they were beaten and threatened by members of the Pulaski County sheriff's office in an attempt to extract a confession to the Mason murder was introduced. Fairchild also presented witnesses who claimed to have seen or heard others being beaten at the police station, or who claimed that suspects who had been beaten told them about the experience afterward. This evidence, according to Fairchild, shows that there was systematic abuse of suspects in the murder investigation and therefore proves that he was coerced into confessing and that his confessions were not reliable because the police told him what to say. Respondents, on the other hand, presented testimony by the sheriff and deputies of Pulaski County that they had not abused anyone.

The district court carefully considered all the testimony. The court concluded that most of the witnesses presented by Fairchild were not credible due to their demeanor, the numerous contradictions in their stories,[3] and the credible rebuttal evidence presented by respondent. The court found that only a few of the witnesses had probably been abused or intimidated in some manner. The court further found, for several reasons, that this evidence did not change its prior finding that Fairchild's confessions were voluntary. First, the evidence did not show that abuse and intimidation of suspects was systematic, i.e., not every suspect questioned about the murder was abused or intimidated. In fact, most were not. Second, the forms of abuse were generally dissimilar to those Fairchild claimed he had undergone.[4] Third, there was no direct evidence presented at the hearing that Fairchild had been forced to confess.[5]

█ Fairchild argues that the district court erred in its findings of fact and its determinations of credibility on which they are based. We review findings of fact for clear error. *Singleton v. Lockhart*, 962 F.2d 1315, 1321 (8th Cir.1992). "Under Fed.R.Civ.P. 52(a), we may set aside findings as clearly erroneous if, after reviewing the entire record, we are 'left with the definite and firm conviction that a mistake has been committed.'" *Maasen v. Lucier*, 961 F.2d 717, 719 (8th Cir.1992) (citing *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)). When findings of fact are based on determinations of credibility, we must accord them even greater deference. *Id.* After careful review of the record, we cannot say that the district court's findings are clearly erroneous.

█ Fairchild also argues that the district court's fact finding process was erroneous because it made credibility determinations focused on each individual witness instead of looking at the overall mosaic created by the evidence. This argument is fundamentally flawed. It is impossible for evidence that is not credible in itself to form an overall picture that is both credible and convincing. Fairchild is asking the court to add a group of negative numbers together and find that the sum is positive.

2. The respondents argue that we should not consider this issue because it is a successive petition. Because we believe Fairchild's claim is meritless, however, we will resolve the issue on this basis rather than addressing the successive petition argument. *See Green v. Groose*, 959 F.2d 708, 710 (8th Cir.1992). We assume *arguendo* that this is newly discovered evidence that could not have been previously discovered.

3. The district court made special findings on the numerous contradictions between the motion to remand and the supporting witnesses' affidavits upon which we relied to remand for a hearing and the actual testimony presented at the hearing. *Fairchild*, No. PB–C–85–282, slip op. at 229–33. In at least two of the five cases, the testimony at the hearing was completely different from the contents of the original affidavit. In addition, petitioner failed to show any real similarity between the abuse alleged by the witnesses presented and the abuse alleged by petitioner himself.

4. The court found that the testimony regarding similar forms of abuse, such as being beaten with a telephone book or with other instruments on top of a telephone book so as not to leave marks, was not credible and was manufactured to conform with Fairchild's claims.

5. Fairchild presented his direct evidence (his own testimony) at a suppression hearing in front of the trial court. This evidence was reviewed by the district court under his first habeas petition. The district court held that his confessions were voluntary, *Fairchild*, 675 F.Supp. at 490–91, and we affirmed. *Fairchild*, 857 F.2d at 1207.

The district court refused the invitation, and we will not accept it either. We affirm the district court's finding that Fairchild's confessions were voluntary and reliable. The evidence does not support any other conclusion.

### B. *Brady* Claims

Fairchild claims that exculpatory evidence was not revealed to him by the prosecutor in violation of the rule set down in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The most troubling claim that Fairchild makes is that the prosecutor failed to reveal that there was evidence in the sheriff's office investigatory file that two people remembered that on the day of the murder the victim was wearing a gold metal watch very different from the one Fairchild gave his sister.[6]

■■ Respondent argues that this *Brady* claim is an abuse of the writ because it was never presented to any court prior to the evidentiary hearing on his third habeas petition. "The doctrine of abuse of the writ defines the circumstances in which federal courts decline to entertain a claim presented for the first time in a second or subsequent petition for a writ of habeas corpus." *McCleskey v. Zant*, ── U.S. ──, ──, 111 S.Ct. 1454, 1457, 113 L.Ed.2d 517 (1991). In order to overcome an abuse of the writ defense, a petitioner must show both cause for the default and prejudice resulting from it. *Id.* at ──, 111 S.Ct. at 1470. If a petitioner cannot show cause, he can still prevail if he can show that a fundamental miscarriage of justice has taken place.[7] *Id.*

Fairchild claims that he has met both of these burdens. We disagree.

■■ Fairchild has met the cause prong of the cause and prejudice test. "[T]he cause standard required the petitioner to show that 'some objective factor external to the defense impeded counsel's efforts' to raise the claim...." *Id.* (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)). We have reviewed the record carefully, with particular attention to the file the prosecutor turned over to Fairchild's attorney for trial. There is nothing in that file that would alert a defendant or an attorney to the existence of the evidence that the victim may have been wearing a gold metal watch rather than a black scuba watch. The prosecution told Fairchild's attorney that he had turned over his entire file,[8] thereby leading the attorney to believe that he had received everything that existed. Therefore, Fairchild had cause for not discovering this evidence earlier.

■■ Once the petitioner has established cause, he must show " 'actual prejudice' resulting from the errors of which he complains." *United States v. Frady*, 456 U.S. 152, 168, 102 S.Ct. 1584, 1594, 71 L.Ed.2d 816 (1982), *quoted in McCleskey*, ── U.S. at ──, 111 S.Ct. at 1470. We admit to being somewhat troubled by this claim because the black scuba watch was an important piece of evidence at Fairchild's trial. After careful review, however, we do not believe that Fairchild can show actual prejudice resulting from not having the evidence of the other watch at trial. The district court found that this evidence does not cast doubt on the finding that Fairchild

---

**6.** One of the more important pieces of evidence introduced against Fairchild at trial was a black scuba watch, identical to one the victim owned, that police obtained from Fairchild's sister. At the time of trial, she said that Fairchild had "given" it to her for $20 at about the time the murder had taken place. Later, she claimed that he had given it to her before the date of the murder.

**7.** We find here that Fairchild has shown cause, and we further find there has been no fundamental miscarriage of justice. The district court held, and we agree, that Fairchild has not

met this ultimate test. We agree with the district court's comment—we are more convinced than ever of Fairchild's guilt.

**8.** The prosecutor did not deliberately mislead Fairchild's attorney. The evidence that was not turned over was in the sheriff's office investigatory file, not in the prosecutor's file. There is no evidence the prosecutor knew that this evidence existed. Nevertheless, the representation did mislead Fairchild's attorney, both at trial and on appeal. *Brady* applies "irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87, 83 S.Ct. at 1196.

got the black scuba watch from the victim. The record supports this finding. There was a lot of evidence presented at trial linking the black scuba watch to the victim. For example, her parents, who gave her the watch, identified it. Fairchild admitted in his confessions that he had gotten the watch from the victim. Also, there are a number of reasonable explanations for why someone might remember her wearing a different watch on the day of her murder. We find that Fairchild has failed to show actual prejudice resulting from the nondisclosure of this evidence. Therefore, we hold that this claim is an abuse of the writ.

Fairchild raises two other *Brady* claims, neither of which were raised before this petition. Respondent raises abuse of the writ defenses to both claims. We hold that he has failed to show prejudice in relation to them as well.

■ The first claim is that there was evidence withheld indicating that the victim was abducted from a site other than the site to which Fairchild confessed. The evidence Fairchild points to is an anonymous phone call. The caller said she had seen a car like the one shown on television with four people in it. She had seen it at about the time of the abduction, but in an area different from where Fairchild said Mason was abducted. When this caller came forward, however, she testified that the car she had seen looked different from the victim's car and the woman she saw in it did not look like the victim. We do not see how this evidence could have helped Fairchild at trial.

■ The second claim is that the prosecutor failed to reveal that people other than Fairchild and his brother had been suspects and questioned about the murder. The district court found that there was no cause here because "[t]here were, indeed, numerous 'red flags' in the file which, viewed

more suspiciously, would have alerted counsel to make inquiry...." The court goes on to say, however, that "in frankness the Court must state that it is doubtful that any but the most suspicious of defense attorneys would have pursued the leads." We agree. Assuming, *arguendo*, that Fairchild has shown cause, however, we do not believe that he has shown prejudice. The district court found, and we have affirmed, that much of the testimony about abuse offered by other suspects was not credible. We cannot find that a jury would have found Fairchild innocent had it been presented with this testimony, much of which was clearly not credible. Also, there is no evidence that Fairchild would have found evidence of abuse at the time of trial even if he had known about the other suspects. For example, his brother, whom Fairchild knew had been questioned during the investigation and whom his attorney interviewed at the time of trial, said nothing about being abused until much later in the process. Therefore, we also dismiss these claims.[9]

## II.

In summary, we find that the district court did not err in holding that the evidence presented relating to abuse of other suspects did not prove that Fairchild's confessions were coerced and unreliable. The district court did not clearly err by finding that most of the allegations of abuse were not credible. We dismiss Fairchild's *Brady* claims as abuses of the writ because Fairchild has not shown prejudice. We thus affirm the district court's findings of fact on remand and affirm its previous denial of Fairchild's habeas petition.

RICHARD S. ARNOLD, Chief Judge, concurring.

I agree that we should affirm the dismissal of this third petition for habeas cor-

---

9. Fairchild also raised an argument to this court that has never been raised before. He claims that the fact that participants differed about the order in which they went to the various places involved in the abduction and murder when Fairchild led the deputies on the tour between confessions proves that there was a second tour that occurred before the first confession. He points to one sentence in the first confession as further proof. Although we need not address this because it has never been raised before, *see Thompkins v. Stuttgart Sch. Dist. No. 22*, 787 F.2d 439, 440–41 n. 1 (8th Cir.1986), we have reviewed the record and find the claim meritless.

pus. I set out briefly my reasoning, which differs somewhat (mostly only in detail) from that of the Court.

Fairchild makes two main arguments: that his confessions were coerced, as shown by newly discovered evidence that other suspects in the Mason murder investigation were abused; and that exculpatory evidence about the victim's watch was withheld from his lawyers in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

The attempt to relitigate the coerced-confession claim (it was rejected on its merits at the time of the first habeas, in 1988) is barred as an abuse of the writ, in my view. Fairchild has failed to show cause for not having earlier offered the evidence—now characterized as newly discovered—that other suspects were abused. Information available to Fairchild's trial counsel clearly indicated that there were other suspects. These people could have been interviewed before trial, or in any event before the evidentiary hearing on the first habeas petition. The State failed to disclose material in its files that would have described more fully the involvement of other suspects in the investigation. But this failure to disclose in no way prevented counsel from conducting their own investigation of those persons whom they knew, for example, to have furnished hair samples. This investigation, in turn, could well have led to interviews of other suspects whom the Sheriff's Department questioned in connection with the Mason murder.

The way the new evidence of abuse of witnesses came to light bears out this analysis. It was not the uncovering of material previously undisclosed by the State that began this process at all. Instead, publicity surrounding the execution date that was set in September of 1990 caused certain men who had been questioned in 1983 to come forward with claims of coercion. So I do not see that any "objective factor external to the defense," *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986), like withholding of relevant information by the State, impeded counsel's efforts to investigate the coerced-confession claim fully. There was a withholding of information, all right, but it was not the cause of counsel's not having earlier uncovered evidence of abuse of other suspects. The absence of cause for not having offered this evidence earlier is dispositive of this argument. It is not necessary to go further and explore the question of prejudice or the merits of the coerced-confession claim as bolstered by the new evidence. As to the actual-innocence exception from the normal rules of procedural bar, this case does not even come close.

I think, though, that the claim based on withholding of evidence about another watch is not procedurally barred. Cause is shown by the withholding of exculpatory evidence, which is a *Brady* violation. The question of prejudice, in the context of a *Brady* claim, is really part of the merits. In order to get relief on a *Brady* claim, one must show not only a failure to disclose exculpatory evidence, but also a reasonable likelihood that, if the withheld evidence had been introduced at trial, the verdict would have been different. *United States v. Bagley,* 473 U.S. 667, 682, 685, 105 S.Ct. 3375, 3383, 3384, 87 L.Ed.2d 481 (1985). For the reasons given by the District Court and by this Court in Part IB of its opinion, there is no such likelihood.

This is an extraordinary case, for many reasons. I hope it will not be considered amiss for me to venture a few concluding observations.

1. Appointed counsel for Fairchild have performed with great diligence and ingenuity. I do not know of anything they have left undone to challenge his conviction.

2. As to the death sentence itself, Fairchild has been steadfast in deliberately withholding any attack that would gain for him only a reduction of sentence to life imprisonment. He probably did not kill Ms. Mason. The actual killing was probably done by his confederate, and Fairchild may not have intended or even expected this to happen. These facts could have been the basis of a well-founded attack on the sentence of death. Fairchild does not wish to bring such an attack. He has a

right to make this decision, and, in my opinion, he is bound by it.

3. The District Court found that officers or employees of the Pulaski County Sheriff's Department did commit some physical abuse of suspects in the course of investigating the Mason murder. For reasons explained at length by that Court and by us, that circumstance does not entitle Fairchild to relief. But it is still disgraceful. The evidence also unmistakably shows a current of racism in the Sheriff's Department of 1983. This is an affront to justice which the citizens should not tolerate. As the District Court aptly put it, "in a democracy there are precious few things which are worse than 'the abuse of state conferred police powers." Slip op. 412.

4. This case has been more carefully examined than any other habeas proceeding I have seen in 14 years on the federal bench. I am convinced beyond a reasonable doubt that Fairchild's confession was both voluntary and truthful, and that he did abduct and rape Marjorie Mason. The District Court's consideration of this case has been exhaustive. It has also been fairminded, which is more important. I concur in the judgment of this Court. The third habeas petition was correctly dismissed with prejudice.